IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BOB PORTO, d/b/a BOB PORTO BUILDERS,                                          PLAINTIFFS
on behalf of himself and others similarly situated

v.                                                  No. 4:17CV00440 JLH

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY                                                DEFENDANT

**OPINION AND ORDER**

Bob Porto, doing business as Bob Porto Builders, commenced this putative class action in the Circuit Court of Pulaski County against Allstate Property and Casualty Insurance on June 6, 2017. Allstate removed the action to this Court on July 7, 2017. Porto is a licensed roofer. He works on storm-damaged homes. Porto says he has been passed over for jobs because Allstate forces its customers to select the roofer who submits the lowest bid, even though Allstate knows those roofers will not comply with Arkansas building codes. Count I of the class action complaint alleges violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101 through 116, and Count II seeks relief pursuant to the Arkansas Declaratory Judgment Act, Ark. Code Ann. §§ 16-111-101 through 117. Allstate has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted.

**I.**

The complaint alleges the following facts. *See* Document #2. Porto has been a builder for more than twenty years. He formerly built new homes and renovated kitchens and bathrooms. Now he replaces the roofs of storm-damaged homes. Porto is licensed by the Arkansas Contractors Licensing Board to replace roofs and is familiar with the building codes. Since January 1, 2016, Porto has bid on roofing jobs, but his bids have been passed over for lower bids submitted by roofers

who "have no intention of replacing the roofs consistent with Arkansas's roofing codes." Document #2 at 3, ¶10. According to Porto, Allstate knows that the lower bidders will not comply with the codes but forces its customers to select those bidders so that Allstate can save money. Porto and other licensed roofers are damaged by Allstate's practice because their bids are not selected.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The Court accepts as true all of the factual allegations contained in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

## III.

Count I alleges violations of the Arkansas Deceptive Trade Practices Act, which protects consumers from a variety of unfair and misleading business practices. Ark. Code Ann. §§ 4-88-101 through 116. The "safe harbor provision," however, precludes the Act's application to "[a]ctions

2

or transactions permitted under laws administered by the Insurance Commissioner" and other regulatory bodies acting under statutory authority of the state and federal governments. Ark. Code Ann. § 4-88-101(3). Allstate maintains that because it is a regulated entity engaged in regulated conduct, the Act does not apply.

The scope of the safe harbor provision and its interpretation by the Arkansas Supreme Court have been the subject of much litigation in federal court. *See Tuohey v. Chenal Healthcare, LLC*, 173 F. Supp. 3d 804, 809 (E.D. Ark. 2016) (collecting cases and interpreting the safe harbor provision broadly to preclude actions against regulated entities engaged in regulated conduct); *Gabriele v. Conagra Foods, Inc.*, No. 5:14-cv-05183-TLB, 2015 WL 3904386 at *7 (W.D. Ark. June 25, 2015) (holding "[c]onsistent with the plain language of the ADTPA, it appears that the Arkansas Supreme Court recognizes and applies the so-called general-activity rule"); *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 5:10CV00032-JLH, 2010 WL 2573196 at *4 (E.D. Ark. June 22, 2010) (reasoning that if the safe harbor provision only applied to permitted conduct, "the ADTPA would apply to any action or transaction alleged to be unlawful, which would render the exceptions listed in section 4-88-101 meaningless and doubtless run afoul of the statutory scheme created by the Arkansas General Assembly."). *But see Willsey v. Shelter Mut. Ins. Co.*, Civil No. 12-2320, 2013 WL 4453122 at *2 (W.D. Ark. Aug. 16, 2013) ("The Eastern District of Arkansas has stated that the insurance activity exception of the ADTPA excludes all insurance activity in the State of Arkansas whether permissible or not . . . With all due respect to these decisions, this Court does not need to engage in speculation or conjecture regarding state law. The plain meaning of the safe harbor provision only excludes activity permitted by the Insurance Trade Act.").

3

On February 7, 2017, Chief Judge Brian S. Miller entered a Certification Order certifying two questions to the Arkansas Supreme Court, which under Ark. Sup. Ct. R. 6-8 may resolve questions of Arkansas law before a federal court if the questions are determinative and there is no controlling precedent. *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, 4:16-cv-00266-BSM (E.D. Ark.). The first question asks whether the Arkansas Supreme Court cases interpreting the scope of the safe harbor —*DePriest v. AstraZeneca Pharm., L.P.* and *Arloe Designs, LLC v. Ark. Capital Corp.*—are in conflict and if so, how to resolve that conflict. *DePriest*, 2009 Ark. 547, 351 S.W.3d 168; *Arloe*, 2014 Ark. 21, 431 S.W.3d 277. The second question asks whether the safe harbor applies to conduct prohibited under laws administered by state and federal regulators. The Arkansas Supreme Court accepted the questions on March 2, 2017, briefing has been completed, and the court is working to schedule oral argument. *Air Evac EMS, Inc. v. USAble Mut. Ins. Co.*, CV-17-103. Porto requests that the Court refrain from ruling on whether the conduct alleged in the complaint falls within the safe harbor provision until the Arkansas Supreme Court answers the certified questions. Document #20 at 3. That request is granted. Porto's complaint must be dismissed for other reasons.

**IV.**

Article III, § 1 limits the jurisdiction of federal courts to "Cases" and "Controversies." *See Whitmore v. Ark.*, 495 U.S. 149, 155, 110 S. Ct. 1717, 1722, 109 L. Ed. 2d 135 (1990). To identify "those disputes which are appropriately resolved through the judicial process," the courts consider whether a party bringing suit has standing. *See Clinton v. City of New York*, 524 U.S. 417, 430, 118 S. Ct. 2091, 2099, 141 L. Ed. 2d 393 (1998). The United States Supreme Court in *Lujan v. Defenders of Wildlife* explained that standing contains three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, *see* [*Allen*, 468 U.S.] at

4

756, 104 S. Ct., at 3327; *Warth v. Seldin*, 422 U.S. 490, 508, 95 S. Ct. 2197, 2210, 45 L. Ed. 2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-741, n. 16, 92 S. Ct. 1361, 1368-1369, n. 16, 31 L. Ed. 2d 636 (1972);1 and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " *Whitmore*, *supra*, 495 U.S., at 155, 110 S. Ct., at 1723 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42, 96 S. Ct. 1917, 1926, 48 L. Ed. 2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*, at 38, 43, 96 S. Ct., at 1924, 1926.

504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The burden to establish these elements is on the party invoking federal jurisdiction. *Id*. While Allstate removed this action, Porto is considered "the party invoking federal jurisdiction" for the purpose of establishing standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 343 n.3, 1861 n.3, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006). At this stage in the litigation, Porto must merely plausibly allege that he can establish the elements of standing. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014).

The issue here is causation. "[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560-61, 112 S. Ct. 2130 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)). Porto alleges that he and other roofers lost jobs as a result of Allstate's unfair business practice of steering its customers to select the lowest bidder, even though Allstate knows that bidder will not comply with the building codes. Document #2 at 5-6, ¶¶ 37-41. The alleged connection between Porto's injuries and Allstate's unlawful conduct is too tenuous for purposes of Article III. *See Miller*, 688 F.3d at 935. Allstate did not

5

select the bidder; its insured selected the bidder. The complaint gives no detail as to how many roofers bid on each project, or how those roofers' qualifications compared to Porto's qualifications. In short, the complaint does not plausibly allege facts from which the Court can infer that but for Allstate's unlawful conduct, Porto would have been selected for any specific roofing job. Therefore, "[f]or purposes of Article III, too many factors stand in the way of a direct causal relationship." *Miller*, 688 F.3d at 936.

## V.

Even if Porto sufficiently alleged that he has standing, the complaint would fail for lack of particularity. Porto alleges that Allstate's practice violates the Act's "catch-all provision," which prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). While section 107(a)(10) does not use the word "fraud," the other provisions of section 107 prohibit making false representations, engaging in fraud, and improperly using economic leverage in a trade transaction. *See Universal Coop., Inc. v. AAC Flying Serv., Inc.*, 710 F.3d 790, 795 (8th Cir. 2013). The Eighth Circuit has therefore interpreted the catch-all provision "to reach similar instances of false representation, fraud, or the improper use of economic leverage in a trade transaction." *Id.* at 795-96. To state a claim for a violation of section 107(a)(10), Porto must allege (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act. *Skalla v. Canepari*, 2013 Ark. 415, 14, 430 S.W.3d 72, 82. The heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) applies to the first element. *See Universal Coop. Inc.*, 710 F.3d at 795, n. 5; *see also Dickinson v. SunTrust Mortg., Inc.*, No. 3:12CV00112 BSM, 2015 WL 1868827 at *2 (E.D. Ark. April 23, 2015).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Eighth Circuit has explained: "We interpret this rule in harmony with the principles of notice pleading, and to satisfy it, the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Star City Sch. Dist. v. ACI Bldg. Sys., LLC*, 844 F.3d 1011, 1016 (8th Cir. 2017) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). "Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *United States ex. rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (quoting *United States ex. rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)). Rule 9(b) "is designed to protect defendants in fraud cases from frivolous accusations and allow them to prepare an appropriate response." *Roberts v. Accenture, LLP*, 707 F.3d 1011, 1018 (8th Cir. 2013) (quoting *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011)).

The fraud allegations in the complaint are:

> 10. Since on or about January 1, 2016, Plaintiff has lost roofing jobs to lower bidders because the lower bids ignore roofing codes and these roofers have no intention of replacing the roofs consistent with Arkansas's roofing codes.

> 11. Allstate is completely aware that the lower bidders are not going to replace the roofs within code, and even though its policy with its customer specifically provides that repairs will be made within code.

> 12. Indeed, Allstate acts with knowledge and forces its customers to use the lower bidders who are not going to replace their roofs within Arkansas's building codes, because it will only pay the lowest bidders' price in order to save money in its payouts.

> 13. As a result, roofers licensed by the Arkansas Contractors Licensing Board, such as Plaintiff, are damaged by Allstate's purposeful decisions to choose

> bidders and bids incapable of meeting building codes to repair or replace its policyholders' roofs.
>
> 14. Allstate's wrongdoing, as alleged above, is continuing to the detriment of Plaintiff and other Arkansas licensed roofers.

Document #2 at 3. The complaint never alleges the "who, what, when, where, and how" of any fraudulent transaction. *See* Document #2 at 2-3, ¶¶ 4-15. No specific roofing job is identified anywhere in the complaint. No specific Allstate insured who was forced to hire a bad roofer is identified. No date is stated on which any bids were submitted on any roofing job. No roofer or roofing company who won bids to work Allstate customers without intending to perform the work according to code is identified. No specific code violations are identified. No explanation is given as to how or the extent to which any code violations caused discrepancies in the bids submitted by roofers. The complaint fails to allege the who, what, when, where, and how of any fraudulent transaction. In short, the complaint wholly fails to meet the particularity requirement of Rule 9(b).

**VI.**

Count II cites the Arkansas Declaratory Judgment Act, Ark. Code Ann. § 16-111-101 through 117, as independent grounds for relief. Document #2 at 6, ¶¶ 37-38. Document #2 at 6. The complaint also seeks injunctive relief. Document #2 at 6, ¶39. But a federal court exercising diversity jurisdiction applies state substantive law and federal procedural law. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, does not grant jurisdiction where it otherwise would not exist, it merely provides an additional procedural remedy to the court. Therefore, when a state court declaratory judgment action is removed, the federal district court treats the action as one invoking the Federal Declaratory Judgment Act. Fed. R. Civ. P. 27; *see Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 n. 4 (3rd Cir. 2017); *Hartford Fire Ins. Co. v. Harleysville Mut. Ins.*

*Co.*, 736 F.3d 255, 261-62 (4th Cir. 2013); *Budach v. NIBCO, Inc.*, No. 2:14-cv-04324, 2015 WL 3853298 at *9 (W.D. Mo. June 22, 2015); *Krave Entm't, LLC v. Liberty Mut. Ins. Co.*, 667 F. Supp. 2d 1213, 1237 (D. Nev. 2009).

The Federal Declaratory Judgment Act provides that "[in] a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Here, for the reasons stated above, the complaint fails to allege facts showing that Porto has standing and it fails to meet the pleading requirements of the Federal Rules of Civil Procedure. Therefore, Porto's claims for declaratory and injunctive relief must be dismissed along with his other claims for relief.

## CONCLUSION

For the foregoing reasons, Allstate's motion to dismiss is GRANTED. Document #7. The complaint is dismissed without prejudice.

IT IS SO ORDERED this 16th day of October, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE